GENEVIEVE J. WHITE, Plaintiff, *v.* NATHAN F. LA DUE et al., a Partnership Doing Business under the Name of LA DUE and FITCH, Defendants.

SPENCER WHITE, Plaintiff, *v.* NATHAN F. LA DUE et al., a Partnership Doing Business under the Name of LA DUE and FITCH, Defendants.

Supreme Court, Special Term, Monroe County, January 25, 1950.

*Moser, Johnson & Reif* for defendants.

*Winchell, Macken & Goldwater* for plaintiffs.

CRIBB, J.  The original complaints in these actions were dismissed heretofore by an order of this court for failure to state a cause of action.  The order granted leave to plaintiffs to serve amended complaints.  That order was affirmed by the Appellate Division, Fourth Department (275 App. Div. 1065).  Plaintiffs have now served amended complaints which are the subjects of this motion.  The original complaints alleged that defendant contractors constructed houses on lots on both sides of the highway and that in the course of this work, certain of the lots were filled and graded so that the level of those lots was raised above the level of the adjoining lots.  The result was that surface water which previously had drained from adjoining lots no longer came upon the defendants' land, but drained onto the public street and sidewalk at a point where there was a so-called dip in the highway.  Following the completion of work upon the lands in question, on September 30, 1946, and four months before plaintiff's accident, the defendants sold one of the houses and lots to the plaintiff.  During the following winter the water so draining onto the public highway and sidewalk froze, and the plaintiff Genevieve Jean White, walked down her private sidewalk and as she stepped on the public sidewalk she slipped and fell, thereby sustaining injuries for which she and her plaintiff husband bring these actions.

The gravamen of the original cause of action was that the change in the contour of the defendant's land, diverted the course of the surface water resulting in the formation of water on the public highway and sidewalk, and therefore was a nuisance.

The amended complaints each contain two alleged causes of action instead of one.  However, the first of these is identical in nature to the cause of action heretofore dismissed except that it is based upon negligence rather than nuisance.  The original complaints were dismissed by this court on the theory that the changing of the contour of their lands by defendants did not create a nuisance, because they were lawfully entitled to make such changes.  In neither the original or amended complaints is it alleged that the defendants interfered with, molested, or in any manner changed the contours or surface of the public highway, or *collected* the surface water into *channels* thereby discharging it over neighboring lands or into the public highway. (See *Barkley* v. *Wilcox,* 86 N. Y. 140, and *Bennett* v. *Cupina,* 253 N. Y. 436.)

The allegation that defendants concealed the existence of the basin in which the water collected is also insufficient as a matter of law. A vendor of land is not subject to liability for bodily harm caused to his vendee or others by a dangerous condition which existed at the time the vendee took possession. While there are exceptions to this general rule it may, under certain conditions, hold true even though the vendor conceals or fails to disclose the dangerous condition to the vendee (*Kilmer* v. *White,* 254 N. Y. 64; Restatement, Torts, §§ 352, 353). However, the facts in the instant case do not fall within such exceptions.

By alleging, in the first cause of action in each of the amended complaints, that the acts of the defendants constituted negligence rather than a nuisance does not better the position of the plaintiffs. Whether nuisance or negligence is alleged is immaterial under the facts here presented. Nuisance, except absolute nuisance, is dependent upon wrong doing or negligence (*McFarlane* v. *City of Niagara Falls,* 247 N. Y. 340, 343, 344). It follows that the first cause of action in each of the amended complaints must be dismissed. The second cause of action set up in each amended complaint is next to be considered. It is there alleged that in September, 1946, before the sale, the defendant, Fitch, in response to an inquiry by plaintiff, negligently stated in order to induce the sale, that storm sewers had been placed in the housing development, and that defendant Fitch knew this representation was untrue and that plaintiff would be placed under an unreasonable risk by such statement; that " the plaintiff acted in reliance upon the negligent words of the defendant and thereby sustained damages herein described as a result of such reliance ".

The plaintiffs assert in their brief that " it is the law of New York that liability exists for the negligent utterance of words to a person who is in close proximity to the speaker and therefore entitled to rely upon the negligently spoken words." They quote at length from the court's opinion in *International Products Co.* v. *Erie R. R. Co.* (244 N. Y. 331). In that case the court, after stating (p. 337) that " in some cases a negligent statement may be the basis for a recovery of damages ", and after commenting on several cases holding to that effect — all of which are distinguishable from the instant case, said (p. 338): " Liability in such cases arises only where there is a duty, if one speaks at all, to give the correct information. And that involves many considerations. There must be knowledge or its equivalent that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that

if false or erroneous he will because of it be injured in person or property. Finally the relationship of the parties, arising out of contract or otherwise, must be such that in morals and good conscience the one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care. (*Jaillet* v. *Cashman,* 235 N. Y. 511.) An inquiry made of a stranger is one thing; of a person with whom the inquirer has entered or is about to enter into a contract concerning the goods which are or are to be its subject is another. Even here the inquiry must be made as the basis of independent action. We do not touch the doctrine of *caveat emptor.* But in a proper case we hold that words negligently spoken may justify the recovery of the proximate damages caused by faith in their accuracy.''

This case has been cited many times by our courts in considering the question of liability growing out of negligently spoken words. There is no hard and fixed rule by which in every case involving negligently spoken words the question of liability in damages can be determined. However, a reading of many court decisions indicates that certain elements must always be present to charge the speaker with liability in damages. These are set out in the above-quoted extract from the court's opinion in *International Products Co.* v. *Erie R. R. Co.* (*supra*). It is possible that other conditions might be required in some cases. However, I am of the opinion that no liability would attach where any one of the above-noted considerations was lacking. Applying these general rules to the present case, what do we find? Admittedly Fitch knew that the plaintiff inquired as to the storm sewers for a '' serious purpose ''. But how could he know whether plaintiff intended to rely solely on his statement, or make an independent investigation of her own? How could he know that his statement (assuming that it was false) would place her '' under an unreasonable risk ''? So far as revealed by the papers submitted on this motion the plaintiff asked only concerning the installation of storm sewers. It is common practice for a prospective purchaser of real property on a public street to inquire as to whether storm sewers, sanitary sewers and other public improvements have been installed. Several reasons in the mind of the prospective purchaser may prompt the questions. He may be considering whether he will later be called upon to pay his share of the cost of such improvements if they do not then exist, or the possibility of water flooding his cellar or accumulating on the lands which he is contemplating to purchase. But it seems most unlikely that a prospective pur-

chaser generally, or that this plaintiff in particular, would probe into future possible happenings to the extent of contemplating personal injury from slipping upon the public sidewalk by reason of ice forming on such walk because of the lack of storm sewers. All of such foresight would have to be predicated on the assumption that the plaintiff had observed how the lands adjoining the street had been filled in, the " dip " in the highway in the section of the street in front of the premises she was interested in, the presence of surface water on defendants' lands, its possible discharge on the street, the possibility of its depth in the street sufficient to cover the public walk, that such condition would obtain at a season of the year when the water would freeze, and finally that she might slip on such ice and sustain personal injuries. That plaintiff in early September would contemplate all of these contingencies, or that defendant Fitch, when he stated storm sewers had been installed, (knowing, as alleged, that it was untrue) knew that plaintiff might suffer the accident now the subject of these actions, is most improbable. Further, it is to be remembered that plaintiff inquired only as to the storm sewers. She did not ask if water flooded the highway and sidewalks, or as to conditions obtaining in winter weather. Assuming for the moment that plaintiff did have all of the above-enumerated contingencies in mind, then she assuredly was unusually keen and observant, and could and should have made some investigation of her own as to the existence of storm sewers. She had only to look in order to determine the question since the existence or nonexistence was readily observable. It appears that considerable time elapsed between the time she inquired of Fitch and when she elected to purchase the premises. She had ample time to inquire of the public officials having charge of the street.

It is also to be noted that the misrepresentation by Fitch, assuming that it was made as alleged in the complaint, was not made for the purpose of inducing plaintiff to believe that the sidewalk was always safe for pedestrians, but rather to induce a sale of the premises to plaintiff.

This court believes that the instant case is subject to the general rule that when the facts represented are not matters peculiarly within the seller's knowledge, and the other party has the means available to him of knowing, by the exercise of ordinary intelligence and diligence, the truth or real quality of the subject of the misrepresentation, he must avail himself of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations.

(See *Schumaker* v. *Mather,* 133 N. Y. 590, 596; *Houters* v. *Schlegel,* 51 N. Y. S. 2d 955; *Kroll* v. *Zimmerman,* 88 N. Y. S. 2d 440, and *Ultramares Corp.* v. *Touche,* 255 N. Y. 170.)

For the reasons above stated the second cause of action in each amended complaint should also be dismissed.

Let order enter accordingly. No costs.